State v. Phair.

STATE v. PHAIR.

*Disqualification of Jurors. Experts. Evidence. Entries by Deceased Persons.*

That a juror has formed but not *expressed* an opinion as to the guilt or innocence of the respondent, does not disqualify him in a criminal case.

An expert is a person who possesses peculiar skill and knowledge upon the subject-matter that he is required to give an opinion upon.

It became important to show, as bearing upon the guilt or innocence of the respondent, where he was on a certain day. He claimed that he was at a circus at B. that day, and returned to R. on the midnight train. *Held*, that the state might show by a witness who knew the respondent, and who attended the circus at B. that day, and returned to R. on the midnight train, that he did not see the respondent at the circus nor on the train.

Entries by deceased persons, made in the due course of business, and pursuant to their duty in that behalf, are admissible in evidence.

INDICTMENT for the murder of one Anna Freeze, on the 9th of June, 1874, at Rutland. Plea, not guilty, and trial by jury, September Term, 1874, WHEELER, J., presiding.

Upon the impaneling of the jury, John P. Sheldon, called as a juror, on being interrogated, answered that he supposed he had, from reading accounts of the transaction in newspapers, previously formed some opinion as to the guilt of the respondent, but did not think that he had ever expressed any opinion ; that if he knew his own position, he thought he was not so prejudiced but that he could try the case upon the evidence given in court. Upon this statement, counsel for the respondent claimed that he had a right to challenge this juror for cause. The court held that this did not show good cause for challenge, and the juror was permitted to sit, to which the respondent excepted. Several other persons called as jurors, on being inquired of, answered that they had, from reading accounts of the transaction at the time, formed some opinion as to the guilt of the respondent, but had never expressed any opinion concerning it, and had no bias so but that they could try the case upon the evidence given in court. Counsel for the respondent claimed the right to challenge each of these for cause ;

but the court overruled the claim, and permitted the jurors to sit, to which the respondent excepted.

Of these, S. C. Tarbell, on being interrogated, answered, among other things, that he read the account of the matter in the Rutland newspapers, and heard considerable talk about it, and that he thought he formed an opinion in regard to the guilt or innocence of the respondent, but did not know that he expressed any opinion, and that he had no bias one way nor the other. Another of these, A. N. Loveland, answered that he read the account of the affair in the Rutland papers, and had formed an opinion in regard to it, more or less; that he did not recollect whether he had expressed an opinion, but might have done so — would not say; that he had heard the subject talked freely, and had talked about it himself; that he had no bias nor prejudice, and did not know whether he had formed such an opinion as to be in the way of his rendering an impartial verdict according to the evidence given in court or not.

Upon the trial, the evidence on the part of the prosecution tended to show that said Anna Freeze was a single woman, and lived alone at her house in the outskirts of Rutland village; that she had three or four hundred dollars in money, a watch and chain, an opera glass, two finger rings that she wore, one of which was so small that she could not take it off, a shawl and a half-shawl, and some other property and jewelry; that the respondent worked for Mansfield & Stimson, in their machine-shop, and boarded at the Berwick House, in Rutland, and was acquainted with her, and sometimes went to her house; that he was not at his work after Friday, June 5th; was with her at a circus at Rutland in the evening of Saturday, June 6th; was seen going from the direction of her house, about eighty rods from it, on the morning of Sunday, June 7th; was not at his boarding place after Sunday evening, until Tuesday morning, about fifteen minutes before four o'clock, June 9th, when he went from the steps of the Berwick House to the depot, and started in the 4:30 morning train for Boston; that about half-past six o'clock of that morning, smoke was seen issuing from the roof of her house; that the front door was fastened, the back door shut, but not fastened; that the

lower story of the house was in good order, but that the upper story was filled with smoke, and her body, partly burned, was on her bed in the room she usually occupied in the upper story, with the throat cut, and several stabs about the neck; that the trunk of the body, with the neck and a part of the head, was rescued from the fire, and showed that she had died from loss of blood before the body was burned; that the house was consumed by the fire, and no trace of the money or jewelry was found about it or about the ruins; *that the respondent went directly to Boston by the train on which he started, and arrived there that after-noon; that he had with him there her watch and chain, opera glass, rings, shawl, and half-shawl; that he went to the Adams House, a hotel there, about four o'clock that afternoon, and reg-istered himself as E. F. Smith, St. Albans, Vermont, and about the same time pledged the watch and chain to one Meyer Abraham, a pawnbroker there, for thirty-five dollars, and said that they belonged to his sister, and that he wanted the money for her, and gave his name in that transaction as E. F. Smith, of St. Albans, Vermont, stopping at the Adams House; that he staid at the Adams House that night, and the next day, June 10th, at ten o'clock in the forenoon, pledged the opera glass and shawl to one James G. Pierce, another pawnbroker there, for ten dollars, and gave the same name and residence in that trans-action, and by that name signed an agreement to Pierce, setting forth the transaction, and left it with him; that while in Boston, he sold the rings for five dollars to a dealer in such articles, and that he left the half-shawl in the wardrobe in the room he occu-pied at the Adams House; that he left Boston by the night train that would pass through Rutland and Vergennes early in the morning of June 11th; that at Fitchburg, on his way, he was told of the murder of Mrs. Freeze; that at Keene he had a wallet con-taining money; that at Cuttingsville he was arrested for the mur-der, and said that he had heard nothing about it before; that afterwards he said that he went to Brandon to a circus there on Monday, June 8th, and staid there until the midnight train, and went on that to Rutland, and to the Berwick House, and stayed till he started on the 4:30 train for Boston on the morning of

State v. Phair.

June 9th, and that when he arrived at Boston he went directly to the Providence depot, and to Providence, and stayed there that night; looked for work and found none, and returned to Boston the next day, and took the train for Vergennes, to which place he had a railroad ticket; and that on the Sunday after his arrest, at the request of those who had caused it, he wrote his own name and the name E. F. Smith, St. Albans, Vermont, on a piece of paper furnished him for that purpose. This paper with the names upon it, the register of the Adams House of June 9th, with the name, E. F. Smith, St. Albans, Vermont, upon it, and the agreement signed E. F. Smith, left with Pierce, the pawnbroker, were put in evidence.

The prosecution called Warren H. Smith, Esq., of Rutland, as a witness, who testified, among other things, that he was an attorney, and called himself something of a judge of handwriting; that he had had occasion to examine handwriting with a view to comparison of writings, and been called to the stand as a witness, in regard to them a good many times; that he thought he could detect handwriting pretty well; that he had never made a business of criticising writing, but after all, had been accustomed to do it, and always supposed he could identify handwriting pretty well. The state's attorney then inquired of him as to whether, in his opinion, this writing and the signatures put in evidence were written by the same hand; to which the counsel for the respondent objected, on the ground that the witness was not shown to be an expert sufficiently to be allowed to testify to his opinion. The court overruled the objection, and permitted the question to be answered, and the witness answered that he had no doubt but that they were all written by the same hand. To this ruling the respondent excepted. The same question was asked of one other witness, who testified that he had been accustomed to examine writings and signatures, as county clerk of Rutland County, and of three other witnesses, who testified that they had been accustomed to examine signatures as to their genuineness, as cashiers of the national banks at Rutland; the same objection was made to each, the same ruling made, and a similar answer given by each. To these rulings the respondent excepted.

47

The prosecution called one Bradbury M. Bailey as a witness, who testified that he was a jeweler at Rutland, and knew the deceased by sight; that her watch had been repaired or cleaned at his and his partner's store, and that they had records of it; that they kept a book, which he produced, in which they made records of the number, name of maker, and kind of watches cleaned or repaired by them; that Mr. Parmenter, his partner, was the watch-repairer, and that it was a part of his business to make such records; that he made the records concerning this watch in the regular course of business, and that he had since died. The state's attorney then offered these entries in evidence, to which the counsel for the respondent objected. The court overruled the objection and admitted the evidence. Two entries were read by the witness, one under date of December 11, 1871, "Mrs. Freeze, gold anchor, Freres (maker), No. 56376 — cleaning screw, repairing jewel, $1.50;" the other under date of January 17, 1873, "Mrs. Freeze, gold anchor, Freres (maker), No. 56376 — cleaning and jewels, $2.00." To the admission of this evidence the respondent excepted. On being shown the watch that the evidence tended to show was hers, and that the respondent pledged in Boston, the witness testified that it corresponded in number and name of maker to those records, and was evidently the watch referred to in them. The prosecution also called one Oliver J. Cain, who testified that he was night clerk at the Berwick House, and was acquainted with the respondent; that he was at Brandon on the 8th of June, and went to the circus there. The state's attorney then inquired of him whether he saw the respondent there. To this the counsel for the respondent objected. The court overruled the objection, and admitted the evidence. The witness testified that he went to the circus, in and out a dozen times, and was about all the time; that he came home on the midnight train to Rutland, and went through the train — the baggage car and two coaches, but not the sleeping car, nor any cars back of that, if there were any, and that he did not know whether there were or not, to see if any of the boys were on the train; that there were some men on the seats with their hats over their

faces so he could not see who they were; and that he did not see the respondent. To this decision the respondent excepted.

Other exceptions were taken, but as they were not considered by the court, they are not stated.

*Dunton & Veazey*, for respondent.

When a juror said he had expressed an opinion as to the guilt of the respondent on reading a newspaper account of the examination before the magistrate a few weeks before, but had no opinion at the trial, and had formed none, and said he could try the case impartially on the evidence, he was held disqualified. *State* v. *Clark*, 42 Vt. 629. If a juror who has no opinion at the time of the trial, is disqualified by a former expression of an opinion, the having an opinion at the time of the trial which he cannot say but that he has expressed, should certainly disqualify him. That a juror has formed an opinion, is ground of challenge in many states, and is clearly the only safe doctrine to adopt. *People* v. *Mather*, 4 Wend. 229; *Commonwealth* v. *Webster*, 5 Cush. 298; *State* v. *Webster*, 13 N. H. 491; *Ex parte Vermilyea*, 6 Cow. 665; *People* v. *Vermilyea*, 7 Cow. 123; *Commonwealth* v. *Knapp*, 9 Pick. 496; *State* v. *Potter*, 18 Conn. 172; *Holt* v. *People*, 13 Mich. 224; *Maddox* v. *State*, 32 Ga. 581; *Trout* v. *Williams*, 29 Ind. 18; *Gray* v. *People*, 26 Ill. 344; *State* v. *Dumphey*, 4 Mo. 438; *State* v. *Arnold*, 12 Iowa, 479; *Alfred* v. *State*, 37 Miss. 296; *People* v. *Gehr*, 8 Cal. 359; *Myer* v. *State*, 19 Ark. 156; *Foster's Case*, 7 Ohio, N. S. 471; *Goodwin* v. *Blochley*, 4 Ind. 438; *People* v. *Backus*, 5 Cal. 275, 347; *Schœffler* v. *State*, 3 Wis. 823; *Alfred* v. *State*, 2 Sneed (Tenn.) 581; *Walsh's Case*, 2 Wall. Jr. 143; *Whitmore's Case*, 2 Wall. Jr. 147; *Smith's Case*, 2 Wall. Jr. 150; *Willis* v. *State*, 12 Ga. 444; *Moses* v. *State*, 10 Humph. 456; *Neely* v. *The People*, 13 Ill. 685.

The question seems never to have been tried by the Supreme Court in any criminal case in this state, and but once in a civil action, and that was at a very early day.

Very good reasons readily occur why the rule should be more guarded in a criminal proceeding, especially a capital case, than in a civil action; but no sound reason can be suggested why the

having an opinion in a civil action even, should not disqualify, as much as the expression of an opinion, formerly made, but not now existing. And in the case referred to in the 3 Vt., Judge WILL-IAMS does not attempt to put the decision upon principle, or meet the adverse argument, but rests it solely on precedent; and since that case, the weight of authority has been strongly the other way. The constitution of Vermont distinctly recognizes the necessity of a more guarded rule in criminal than in civil actions. The provision in civil actions is as follows: " That when an issue in fact proper for the cognizance of a jury is joined in a court of law, the parties have a right to a trial by jury, which ought to be held sacred." Art. 12.

Article 10 provides, " That in all prosecutions for criminal offenses, a person hath a right to a speedy public trial by an impartial jury of the country." The definition of the word impartial, as given by Webster, is, " Not partial; not biased in favor of one party more than another; indifferent; unprejudiced; disinterested." A juror having an opinion as to the guilt of an alleged criminal, cannot be said to be unbiased, indifferent, nor unprejudiced.

In State v. Ward, 39 Vt. 225, it was held that the opinion of a juror that the law inflicting the punishment of death was wrong, disqualified him, although he said that if he was fully satisfied that the respondent was guilty, he would return a verdict of guilty.

Smith and the county clerk were improperly admitted to testify as experts as to the handwriting. No witness except an expert is competent to give an opinion simply by comparison of hands by juxtaposition. Non-experts can only give opinions in cases where they have previous acquaintance or knowledge of the handwriting by which the genuineness of the controverted specimen is to be tested. Woodman v. Dana, 52 Me.; Am. Law Reg. Jan'y No. 1867, p. 186. These witnesses were not strictly experts upon identity of handwriting. Ellingwood v. Bragg, 52 N. H.; Am. Law Reg. Jan'y No. 1874, p. 57.

The objection to the testimony of Cain was well taken, and the testimony should have been excluded, on the ground that it was not

the best evidence that he was not there, and was so remote as to afford ground of conjecture only. In *Commonwealth* v. *Kinison,* 4 Mass. 646, it was held that in an indictment for having in possession a counterfeit bank note, it is not sufficient for witnesses to swear to the identity of the note, unless it has been constantly in their possession, or they have put a private artificial mark upon it before parting with it. It is well established that evidence so remote as to afford ground of conjecture only, is not admissible. *Bartlett* v. *Hoyt,* 33 N. H. 155 ; *Haywood* v. *Bath,* 38 N. H. 179.

The entries in the book of Bailey & Parmenter were improperly admitted. This was in the nature of hearsay evidence. A presumption from a presumption, or an inference from an inference, is allowed in but very few cases. Here it is attempted to presume this was the same property, because the entries described similar property, and then presume that she had those same articles when she died, all from these entries ; and lastly, from these, that Phair robbed her when he murdered her. This is carrying the doctrine of presumption further than has been allowed. But this mode of proof is not admissible. The only case where such entries are admissible in suits between third persons, is where the entry is against the interest of the person making it. *Chase* v. *Smith,* 5 Vt. 556 ; *Higham and Wife* v. *Rdgway,* 10 East, 109 ; [s. c. 2 Smith Lead. Cas. *330.] Books of accounts are not evidence against one not named as the debtor. *Brown* v. *George,* 17 N. H. 128. There are many *dicta* in the American and the English reports, that entries made in the usual course of business at the time they bear date, by a person since deceased, corroborated by other circumstances, are admissible in evidence. But on an examination of these cases, it will be found that such entries were admitted *in evidence in suits between the parties directly affected by the entries, and named therein;* as for instance, the memoranda of a notary public, showing demand and notice in a suit between indorser and indorsee of a promissory note. *Nicholas* v. *Webb,* 5 U. S. Cond. Rep. 451. Memoranda of an attorney, showing notice to quit in a suit between landlord and tenant. *Patteshall* v. *Lurford,* 23 E. C. L. 212. See also *Welsh* v. *Barrett,* 15 Mass. 360. The entry in question is of the same charac-

ter as the entry in the case of *Queen* v. *Inhabitants of Worth*, 45
E. C. L. 132, referred to in *Higham* v. *Rdgway*, 2 Smith Lead.
Cas. 333. There is no more reason for admitting the entries in
question in a case of this kind, than for admitting the declara-
tions of deceased persons. It was not part of the *res gestæ ;* on
the contrary, it was *res inter alios acta,* and in another matter.
As to the classes of cases where such evidence is admissible, see
1 Greenl. Ev. s. 120. To make it a part of the *res gestæ,* it must
constitute a part of the fact desired to be proved—be in regard
to a transaction depending at the same time. 1 Stark. Ev. 47,
49 ; 1 Greenl. Ev. ss. 108, 113, 114 ; *Luby* v. *Hudson River R.
R. Co.* 17 N. Y. 133 ; 1 Phil. Ev. Cowen & Hill's notes, 185,
231–2–3, and 444, *et seq.*

M. G. *Evarts* and *E. J. Ormsbee,* for the state.

By the common law, and the decision of the Supreme Court in
this state, a person is qualified to try a cause, if free from bias or
prejudice, is impartial, can try the cause upon the law and evi-
dence, and return a true verdict therein, and has not expressed
an opinion upon the guilt or innocence of the respondent. With
these qualifications, any impression made or opinion formed and
not expressed, is not a cause for challenge. In the case of *Board-
man* v. *Wood,* 3 Vt. 570, the juror objected to had heard most of
a former trial of the same cause, had formed an opinion, and
might have frequently expressed it ; yet the court held that he was
qualified. Brayton, 170 ; *State* v. *Clark,* 42 Vt. 629 ; 5 Cush.
297. All the jurors objected to in this case came clearly within
the rule adopted in *Boardman* v. *Wood.* In some states the dis-
qualification is a question of fact found by the court or by triers.
*People* v. *O'Brien,* 36 N. Y. 276 ; 43 Ib. 31.

The book of Bailey & Parmenter, with the entries therein made
in the usual course of business by Parmenter, whose duty it was
to make such entries, was clearly admissible in evidence of the
fact therein contained. *Price* v. *The Earl of Torrington,* Salk.
285 ; *Doe* v. *Turford,* 3 B. & Ad. 890 ; *Welsh* v. *Barrett,* 15 Mass.
380 ; *Augusta* v. *Windsor,* 19 Me. 317 ; *Nichols* v. *Webb,* 5 U. S.
Cond. Rep. 451 ; *Bacon* v. *Vaughan,* 73 Vt. 93 ; Smith Lead.
Cas. 397, and cases there cited.

The experts called to prove the handwriting, show abundant competency.    The jury were the judges of the weight of their testimony, and were themselves judges of the handwriting by comparison.    *State* v. *Carr*, 5 N. H. 367 ; *Furber* v. *Hilliard*, 2 N. H. 480 ; N. H. Digest, 362.

The testimony of Cain was also admissible ; and though not conclusive, was entitled to its due weight.

The opinion of the court was delivered by

ROYCE, J.    The first exception taken was to the denial of the court of the right of the prisoner to challenge certain of the jurors who were empanelled, for cause.    The cause for challenge relied upon was, that the jurors were not impartial, and hence that they were not such jurors as the prisoner, under Article 10 of the constitution of the state, had the right to be tried by.    The only evidence of partiality shown, upon which the right to challenge the juror John P. Sheldon could be predicated, was, that he admitted that he supposed he had, from reading accounts of the transaction in newspapers, previously formed some opinion as to the guilt of the respondent, but did not think he had expressed any opinion, and added, that if he knew his own position, he thought he was not so prejudiced but that he could try the case upon the evidence given in court.    The juror S. C. Tarbell said he had read an account of the matter in the Rutland papers ; had heard the matter talked of considerably, and formed an opinion in regard to the guilt or innocence of the respondent, but had no bias or prejudice in the matter, and did not know that he had ever expressed an opinion.    The statement of the juror A. N. Loveland was substantially like that made by Tarbell, except that he, when asked if he had any recollection of expressing an opinion about the guilt or innocence of the prisoner, replied that he did not recollect that he had, but that the subject had been talked of freely, and he might have done so.    There being no evidence of the expression of an opinion by either one of the jurors, the right of challenge would rest upon the fact that they had formed an opinion.    The question, whether having formed an opinion would disqualify a juror, was directly before this

court in *Boardman & Foot* v. *Wood & Wood*, 3 Vt. 570. On empanelling the jury in that case, one of the jurors, in answer to an inquiry put to him, stated that he had heard most of the case on a former trial, and then formed an opinion in relation to it, might have frequently expressed it, though he could not remember whether he had or not. Counsel objected to the competency of the juror. The court overruled the objection, and decided that though the juror had formed an opinion, still, if he had not expressed it to others, he was not disqualified. Judge WILLIAMS, in giving the opinion upon the exception taken to the above ruling, after a thorough and exhaustive review of the cases, both civil and criminal, bearing upon the question, states the conclusion to be, that " upon an examination of the authorities, we are inevitably led to the conclusion that the decision of the County Court on this question was conformable to the common law as found in the English reports, and as recognized in the courts of the United States and this state, and must be considered as correct, as far as any principle can be settled by authorities." And in *State* v. *Clark*, 42 Vt. 629, Ch. J. PIERPOINT, in commenting upon the above case, says, that as far as his experience and observation extended, the rule there laid down had always been observed and practiced upon, both by the courts and bar in this state ; and that the practice had been the same in civil and criminal cases. So that there can be no doubt upon these authorities but that the rule is as it was held to be by the County Court. But it is claimed that the rule is an unreasonable one ; and the court are called upon to adopt a rule that will make the formation of an opinion a disqualification, and which will exclude every man from the jury box who has formed an opinion, irrespective of the evidence or circumstances upon which the opinion was formed. Men frequently form an opinion from reading an account of a transaction in newspapers, as did the jurymen in this case. Such opinions are formed, relying upon the truthfulness of the published account, and are subject to be changed and altered by contradictory accounts. Men form opinions almost imperceptibly, from hearing or reading ; and opinions thus formed do not generally disqualify them from rendering a fair and impartial judgment when duty

calls for its exercise.    Persons accused of crime need intelligent jurors to judge of the truth or falsity of the charges preferred against them, and the adoption of the rule contended for would operate to exclude reading, intelligent men from the jury box, and their places would have to be supplied by the ignorant and incompetent.    If any new rule is to be adopted, it seems to. me it would be more reasonable not to make the formation and expression of an opinion the arbitrary test of a juror's competency, but to permit an inquiry to be made as to the facts and circumstances upon which the opinion was formed ; and if upon such inquiry it should be found that the juror was free from bias or prejudice, and could and would fairly and impartially judge of the matters to be submitted to him, he should be held to be competent.

The exceptions to the admissibility of the opinions of the witnesses who were offered as experts upon the question of handwriting, considering that the question is so presented as to be revisable in this court, was properly overruled.    An expert is defined to be a person that possesses peculiar skill and knowledge upon the subject-matter that he is required to give an opinion upon. The witnesses were shown to possess skill and knowledge that entitled them to the character of experts.    They possessed knowledge and skill superior to that shown to have been possessed by the witness Nichols, in *State* v. *Ward & La Vigne*, 39 Vt. 225 ; and it was held in that case that the testimony of Nichols was properly admitted.

The evidence of Cain was properly admitted.    It became important to show, as bearing upon the question of the guilt or innocence of the respondent, where he was on the 8th day of June.    He claimed that he was at Brandon at a circus on that day, and returned to Rutland on the midnight train.    Cain was permitted to testify that he was acquainted with the respondent, and attended the circus at Brandon on that day, and returned to Rutland on the midnight train, and did not see the respondent. This evidence was clearly legally admissible as tending to show that the respondent was not at Brandon on the 8th of June.  The only question that could be made in relation to that kind of evidence would be as to the weight it was entitled to, and there is

no complaint made but that the jury were properly instructed in regard to that.

There was no error in admitting the entries made by Parmenter, as evidence. The entries were made by him in the regular course of business, and it was his business to make them, and he had died since making them. The only use that could be made of the entries as evidence was, to identify the watch described by them. Ever since *The Earl of Torrington's* case, reported in Salkeld, it has been customary to admit such evidence. The principle seems to be founded in good sense and public convenience. The rule is well stated by Ch. J. PARKER, in *Welsh* v. *Barrett*, 15 Mass. 379, that what a man has actually done and committed to writing when under obligation to do the act, and in the regular course of the business he has undertaken, and he being dead, is admissible. See also *Price* v. *Earl of Torrington,* 1 Smith Lead. Cas. (3d ed.) and notes; and 1 Phil. Ev. 347, and Cow. & Hill's and Edward's notes.

None of the other exceptions taken upon the trial have been urged in this court, and we have failed to discover any error that entitles the respondent to a new trial.

The respondent takes nothing by his exceptions, and judgment is rendered upon the verdict.