## STATE *v.* TATRO.

*Juror. Challenge for Cause. Evidence. Hearsay. Confession. Degrees of Murder. Acts of 1869, No. 44.*

An unexpressed opinion as to the guilt of a respondent, unaccompanied by prejudice against him, is not sufficient ground for challenge for cause.

On trial for murder, the defence proceeded on the ground that at the time the act was committed the respondent was intoxicated, and laboring under some form of acute mania, or delirium, resulting from the excessive use of alcoholic drink. The defence asked one of its witnesses, who had visited the respondent in jail shortly after his commitment, and there had conversation with him, to state that conversation. On objection, evidence of the conversation was excluded; but the witness was allowed to state from what he noticed at the time of that visit, and from the respondent's appearance, what he judged the condition of the respondent's mind to be—whether sane or insane. *Held,* that the respondent could not be allowed to make substantive evidence in his own favor by proving his own declarations out of court in that way; and that there was no error.

Confessions procured by a promise from the jailor to a prisoner, chained and in solitary confinement, that he shall be unchained and allowed to associate with other prisoners on making a full confession, are not subject to objection on account of the way in which they are obtained—the promise being of a temporary and collateral favor, and not of a favor in the matter of the punishment for the crime charged.

The application of the common-law rule, that a criminal offense is neither excused nor mitigated by the voluntary intoxication of the person who commits it, in trials for murder, is not affected by No. 44, Acts of 1869, making degrees of murder. Thus, where it appears on trial for murder that the murder was done by some kind of willful, deliberate, and premeditated killing other than by means of poison or by lying in wait, the degree of the offense is not lessened by proof that at the time it was committed the respondent was intoxicated, any more than it would be if it had been perpetrated by means of poison or by lying in wait.

INDICTMENT for the murder of Alice Butler on the evening of June 2, 1876. Trial by jury, April Term, 1877, ROYCE, J., presiding.

At about seven o'clock in the evening of the day of the alleged murder, Charles Butler, the husband of the murdered woman, left his house to go to a neighboring village, leaving behind the respondent, who was then at work for him, as he had been at intervals for two or three years before that time. On entering his house on his return at about nine o'clock, he found the dead body of his wife lying on the floor, with marks of blows from some heavy instrument on the head.

On examination of R. Willard, a juror, he admitted that he had, as he thought, formed an opinion from what he had seen and heard as to the guilt of the respondent, but said that he was not aware that he had any prejudice against the respondent, and had no recollection of having expressed any opinion in the premises. Another juror also said that he had formed an opinion, but had not expressed it. Upon challenge for cause by the respondent, the court ruled that the cause was insufficient; to which the respondent excepted.

The evidence on the part of the respondent tended to show that at the time of the alleged murder, the respondent was laboring under *delirium tremens,* acute mania, or some form of delirium resulting from excessive use of alcoholic drink, whereby he was rendered incapable of premeditating, or forming a design; and expert testimony was introduced as to the nature and effects of *delirium tremens.*

The state introduced C. G. Austin and Hiram Skeels, as witnesses, who testified without objection, to confessions made by the respondent shortly after he was committed to jail. It appeared

from their testimony that the confessions were made after much solicitation, and while the respondent was chained by his ankle to a ring in the floor. The respondent then introduced as a witness Park Davis, who visited the respondent in jail within a few days after his arrest. He testified that he found the respondent manacled and chained to the floor. He was then asked to state the conversation that he then had with the respondent, to which objection was made. The respondent then offered to show by the witness, that on that occasion the respondent then made or pretended to make a confession to the witness, and the sheriff that it was identical with the confession afterwards made to witnesses Austin and Skeels, and that it was on both occasions obtained from him by undue influence, and was therefore entitled to less weight than it would have been if it had been made voluntarily, or under the circumstances detailed by said witnesses. But the testimony was excluded on objection, to which the respondent excepted. The respondent's counsel then stated that the defence proceeded on the ground that the respondent was intoxicated at the time of the alleged murder, that he had *delirium tremens*, and was laboring under an insane excitement; and offered to show by the witness what the respondent's condition was when he visited him as aforesaid—what he said and did as bearing on the question of his sanity, and whether he was laboring under the effects of the long-continued use of intoxicating liquor. The court ruled that the witness might be asked what, from the respondent's appearance and from what the witness noticed at the time, he judged his condition of mind was—whether sane or insane. The testimony as to the conversation was insisted on, but excluded; to which the respondent excepted. The respondent's counsel asked the witness in the course of his examination, and also other witnesses afterwards examined, whether the statements made by the respondent in his confession, and in conversation after his commitment to jail, were a good deal confused, or clear and definite in the narration of what transpired; but the testimony so sought was excluded; to which the respondent excepted. There was evidence introduced on the part of the respondent tending to show that within a day or two after the respondent was committed to jail

he was removed from the common room and placed by himself in an upper room of the jail, and manacled and chained to the floor for the purpose of bringing him to the point of confessing his guilt; and that on one occasion, while he was so confined, after he had made a partial statement of the incidents of the murder to visitors, he asked the sheriff if he might go below, to which the sheriff replied, in effect, that he could not until he had made a full confession.

The respondent requested the court to charge that if at the time of the commission of the act in question, the respondent was so far under the influence of intoxicating liquor as to be in a condition bordering on *delirium tremens,* and was unable to premeditate or form a design, malice could not be implied from the use of the deadly weapon with which the act was committed; that if he was so intoxicated as to be possessed of a mania, and was unable to deliberate or form an intent, then the act would be excusable homicide, or manslaughter at the most; that if the confessions were made while the respondent was in solitary confinement and shackled to the floor, and after the respondent had been told that he should be so kept until he should make a full and satisfactory confession, but that when he had made such confession he should be released and allowed to go with the other prisoners, then such confessions should not be weighed as evidence of guilt; and that malice could not be implied from the use of a deadly weapon, unless it was used with deliberation and not in the heat of passion.

The court charged that under the act of 1869, all murder premeditated by means of poison or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing, &c., should be deemed murder in the first degree, and charged appropriately as to what under that act constituted other degrees of murder. The court also charged that an insane person was not punishable for his criminal acts; that insanity consisted in the incapacity to distinguish between right and wrong as to the act charged, and that in the eye of the law a person in the paroxysms of *delirium tremens* was insane. The court then called attention to the expert testimony upon the subject of that disease. Upon the question of intoxication as an excuse, the court charged as follows:

The voluntary intoxication of one who without provocation commits a homicide, although amounting to a frenzy, that is, although the intoxication amounts to a frenzy, does not excuse him from the same construction of his conduct, and the same legal inferences upon the question of premeditation and intent, as affecting the grade of his crime, which are applicable to a person entirely sober. * * * I don't want to be misunderstood about this, and shall therefore repeat what I consider to be the law upon this point, that is, that if a party gets so intoxicated that he is crazy drunk, that it amounts to a frenzy, so that he does not know what he is doing, and if in such condition he should commit a crime, which, if committed by a sober man would be murder, it is equally murder in the man that is thus drunk.

The court charged, as to the circumstances under which the respondent's confessions were made, that if the question of the admissibility of evidence of them had been made to the court at the time it came in, the question would have been passed upon, but that whether it would have been admitted was a question that the jury had no concern with ; that the evidence was in the case, and was to be weighed for what it was worth in view of the circumstances under which the confessions were shown to have been made. The court also charged that the respondent should not be convicted on his uncorroborated confessions. To the refusal to charge as requested, and to the charge given, the respondent excepted. Verdict, guilty of murder in the first degree.

*G. A. Ballard, Willard Farrington*, and *F. W. McGettrick*, for the respondent.

The respondent should have been allowed to challenge the juryman Willard, for cause. *Boardman* v. *Wood*, 3 Vt. 570 ; *State* v. *Clark*, 42 Vt. 629 ; *State* v. *Phair*, 48 Vt. 366.

The testimony of Park Davis, under the respondent's offer, should have been received. It was material upon the question of the weight of the confessions as evidence. The error of its exclusion was not cured by the charge. *Read* v. *People*, 42 N. Y. 270 ; *Fairchild* v. *Bascomb*, 35 Vt. 398.

The court should have complied with the respondent's request as to the circumstances under which confessions were made, and erred in giving the jury directions to weigh the confessions for

just what they were worth. *State* v. *Jenkins*, 2 Tyl. 377 ; *State* v. *Phelps*, 11 Vt. 116 ; *State* v. *Walker*, 34 Vt. 296 ; *Commonwealth* v. *Tuckerman*, 10 Gray, 173, 193 ; *Commonwealth* v. *Cuffee*, 108 Mass. 285 ; 2 Greenl. Ev. 218–225 ; 1 Whart. Crim. Law, s. 694.

The charge upon the question of intoxication was to the effect that the jury had no right to consider or weigh it in determining the degree of the crime ; that a man who became voluntarily intoxicated, so that he did not know what he was doing, was not allowed to have that fact affect the grade of his crime, although he could not know, deliberate, or meditate upon the act before committing it. That was erroneous. *State* v. *Johnson*, 40 Conn. 136 ; *People* v. *Doyell*, 48 Cal. 85 ; *Jones* v. *Commonwealth*, 75 Penn. 403 ; 1 Am. Crim. Law, s. 41 ; 3 Greenl. Ev. s. 148 ; 15 Am. Law Reg. 505.

The court having charged that there was no express malice, the respondent could not be convicted of murder in the first degree. *State* v. *Johnson*, 40 Conn. 136 ; s. c. 41 Conn. 584.

*H. R. Start*, state's attorney, and *H. S. Royce*, for the state.

The fact that one called as a juror has formed an opinion as to the guilt or innocence of the accused but has not expressed it, does not disqualify him. *State* v. *Phair*, 48 Vt. 366, and cases there cited ; *State* v. *Clark*, 42 Vt. 629 ; *Boardman* v. *Woods*, 3 Vt. 570.

The evidence as to the identity of the confessions was properly excluded. 1 Phil. Ev. 402 and note; 1 Greenl. Ev. 421 ; 17 Mass. 538 ; *State* v. *Carr*, 37 Vt. 191.

The charge as to the confessions and the circumstances under which they were made, was extremely guarded, and more favorable to the respondent than the law would allow. The evidence of the confessions was admitted without objection. Whether it was admissible was a question for the court. 1 Phil. Ev. 543 ; 1 Greenl. Ev. 219. When admitted, the jury were not at liberty to reject it, although judges of the law as well as of the facts. *Commonwealth* v. *Knapp*, 10 Pick. 478. It would, however, be for the jury to judge of the truth of the confessions, and to give

them such weight as they should think proper.   10 Pick. 495;
*State* v. *Carr*, 37 Vt. 191.   But the testimony does not show that
the confessions were obtained improperly.   *Commonwealth* v.
*Morey*, 1 Gray, 461 ; *Smith* v. *Commonwealth*, 10 Gratt. 734 ; 1
Phil. Ev. 507, 552 ; 1 Greenl. Ev. 220, 230.   A confession ob-
tained by a promise of " collateral benefit or boon, no hope or
favor being held out in respect of the criminal charge, is admis-
sible."  *State* v. *Wentworth*, 37 N. H. 218 ; 1 Greenl. Ev. 229 ;
*Rex* v. *Green*, 4 C. & P. 393, 655.  The chief question is
whether the inducement held out is calculated to make the con-
fession untrue ; if not, the confession is admissible.   1 Am. Crim.
Law, 687.

The charge upon the subject of the effect of the intoxication of
the respondent was correct.   *The People* v. *Rogers*, 18 N. Y. 9,
27, and cases there cited ; 1 Am. Crim. Law, 38, 41 ; *Smith* v.
*Wilcox*, 47 Vt. 537 ; 2 Greenl. Ev. 374.

The opinion of the court was delivered by

REDFIELD, J.   The respondent was indicted for murder in the
killing of Alice Butler, and convicted of murder in the first de-
gree, at the April Term of Franklin County Court, 1877.

I.   The juror Willard was challenged for cause.   He admitted
that from what he had seen and heard, he had formed an opinion
as to the matter to be tried, but was not aware of any prejudice
against the respondent, and had no recollection of having ex-
pressed an opinion in the premises.   This was not a legal cause
for challenge.   *State* v. *Phair*, 48 Vt. 366.   However important,
in a trial involving the life of the accused, it is to have a fair and
unprejudiced jury, the matter is largely within the *discretion* of
the court trying the case.   This court, sitting as a court of error,
can only say that the facts stated in the exceptions do not, as a
matter of law, disqualify the juror for sitting in the cause.

II.   We think the narrative by Park Davis of what the re-
spondent told him by way of confession, was properly excluded.
The court allowed Davis to state the condition of the respondent's

62

mind—whether sane or insane — from his appearance, and from what he said and did. But the respondent cannot make substantive evidence in his own favor, by proving his own declarations out of court; nor, under color and claim that his story would afford ground for argument that he was insane. 3 Greenl. Ev. 148.

III. The confessions of the respondent were admitted without objection ; and no question as to the admissibility of the evidence is now before the court. The respondent claims that the confessions were procured by the solitary confinement, and the promises by the jailor that he could go below with the other prisoners. This was the promise of a temporary and collateral boon, and not a hope or favor held out in respect to the criminal charge, and it has been held that the holding out of such favor does not exclude the testimony. 1 Greenl. Ev. 229 ; *Rex* v. *Green*, 4 C. & P. 393, 655 ; *State* v. *Wentworth*, 37 N. H. 218. The testimony being in the case, we think the caution of the court in regard to the weight to be given to it, was very considerate and favorable to the respondent.

IV. The more important question arises upon the charge of the court upon the effect of intoxication upon the grade of the offence. The court charged the jury that voluntary intoxication could neither excuse nor mitigate the offence. There is, perhaps, no principle or maxim of the common law of England more uniformly adhered to than that voluntary drunkenness does not excuse or palliate crime. Lord COKE, in his Institutes, declares that " whatever hurt or ill he doeth, his drunkenness doth aggravate it." 3 Thomas's Coke Lit. 46. And in his reports, Beverley's Case, 4 Coke, 123b, 125a, he says : " Although he that is drunk is for the time *non compos mentis*, yet his drunkenness does not extenuate his act, or offence, nor turn to his avail." And Sir MATTHEW HALE, eminent alike for his humanity and learning, says of drunkenness, which he calls *dementia affectata*, " This vice doth deprive men of the use of reason, and puts many men in a perfect but temporary frenzy ; * * but by the laws of Eng-

land, such a person shall have no privileges by his voluntary con-
tracted madness, but shall have the same judgment as if he were
in his right senses."    And Lord BACON, in his "Maxims of the
Law," (Rule 5), in that comprehensive language which clearly
defines and gives the reasons for the rule of law, thus asserts the
doctrine : " If a madman commit a felony, he shall not lose his life
for it, because his infirmity came by act of God ; but if a drunken
man commit a felony, he shall not be excused, because the imper-
fection came by his own default."    In Burrow's case, Lewin, 75,
A. D. 1823, HOLROYD, J., thus defines the rule : " It is a maxim
in the law that if a man gets himself intoxicated he is answerable
to the consequences, and is not excusable on account of any crime
he may commit when infuriated by liquor, provided he was pre-
viously in a fit state of reason to know right from wrong."    And
the cases of *Rex* v. *Gridley* and *Rex* v. *Menkin*, 7 C. & P. 297,
show the uniformity of this rule in the courts of England.    In
the case of *The People* v. *Rogers*, 18 N. Y., the Supreme Court
had reversed the conviction of Rogers on the ground that the
court had excluded the evidence of the respondent's drunkenness,
as affecting the criminal *intent*.    But the case was, by writ of
error, carried to the Court of Appeals, and the whole law upon
that subject was reviewed and canvassed with great learning and
ability by Chief Justice DENIO and HARRIS, J.    HARRIS, J., says :
" The Supreme Court seem to have understood that in all cases
where without it the law would impute to the act a criminal in-
tent, drunkenness may be available to disprove such intent.    I am
not aware that such a doctrine has before been asserted.    It is
certainly not sound.    The adjudications upon the subject, both in
England and this country, are numerous and characterized by a
singular uniformity of language and doctrine.    They all agree
that where the act of killing is unequivocal and unprovoked, the
fact that it was committed while the perpetrator was intoxicated
cannot be allowed to affect the legal character of the crime."
But it is insisted that under the statute which makes "*degrees*" of
murder, drunkenness qualifies and mitigates the higher offence.
The statute declares that " all murder which shall be perpetrated
by means of poison, or by lying in wait, or any other kind of de-

liberate and premeditated killing, * * shall be deemed murder in the first degree." The same or similar statute has been enacted in most of the States. And many courts have allowed drunkenness to be shown in mitigation of the higher offence. In the case of *State* v. *Jackson*, 40 Conn. 136, the court held that intoxication, as tending to show that the prisoner was incapable of *deliberation*, might be given in evidence. Chief Justice SEYMOUR dissented, and FOSTER, J., who tried the case below, did not sit, so that the four judges constituting the court were, in fact, equally divided. The same case came before that court again in 41 Conn. 584, and the opinion was delivered by the same judge. The court were hard pressed with the former opinion in the same case, and that it had taken a departure from the common law. But the court repelled the intimation, and declared that "we have enunciated no such doctrine," but "held on a trial for murder in first degree, which under our statute requires *actual express malice*, the jury might and should take into consideration the fact of intoxication, as tending to show that such malice did not exist." And, in the same opinion, the judge says : "Malice may be implied from the circumstances of the homicide. If a drunken man take the life of another, unaccompanied with circumstances of provocation or justification, the jury will be warranted in finding the existence of malice, though no express malice is proved. Intoxication, which is itself a crime against society, combines with the act of killing, and the evil intent to take life which necessarily accompanies it, and all together afford sufficient grounds for implying malice. Intoxication, therefore, so far from disproving malice, is itself a circumstance from which malice may be implied. We wish, therefore, to reiterate the doctrine emphatically, that drunkenness is no excuse for crime ; and we trust it will be a long time before the contrary doctrine, which will be so convenient to criminals and evil-disposed persons, will receive the sanction of this court." This reasoning seems to us both illogical and incongruous. To constitute murder of the first degree, the act must, indeed, be done with *malice forethought*. And that malice must be *actual*, not *constructive*. At common law, if the accused shoot his neighbor's fowls, and by accident kill the owner, he is guilty

of murder, yet he did not intend to *murder* but to *steal*. Such cases are excluded by the statute from the definition of murder in the first degree. But " where the act is committed deliberately, with a deadly weapon, and is likely to be attended with dangerous consequences, the malice requisite to murder will be presumed ; for the law infers that the natural and probable effect of any act deliberately done was intended by its actor." 2 Am. Crim. Law. 944. " And intent for an instant before the blow, is sufficient to constitute malice." Ib. 948. It will be admitted that if the respondent had killed his victim " by poison, or lying in wait," the act would have been murder in the first degree, and the fact that he was intoxicated could not have been admitted to excuse or palliate the crime. Yet it is claimed that if the circumstances show that the murder was deliberately planned, and executed with fiendish barbarity and malice, drunkenness may come in to palliate the crime.

This, we think, is making a distinction without a difference. Chief Justice HORNBLOWER, 1 Am. Crim. Law, s. 1103, speaking of the New Jersey statute, which is like ours, says : " This statute, in my opinion, does not alter *the law of murder* in the least respect. What was murder before its passage is murder now—what is murder now was murder before that statute was passed. It has only changed the punishment of the murderer in certain cases : or rather, it prescribes that, in certain specified modes of committing murder, the punishment shall be death, and in *all other kinds of murder* the convict shall be punished by imprisonment."

The evidence, so far as detailed in this case, if believed, shows a murder most fiendish and shocking. He destroyed the last resisting vitality of this woman, struggling for her life, with an axe, which shows malice and malignity of purpose. The language of Chief Justice McKAY, while discussing a like statute in Pennsylvania, and in a case quite similar to this, is fitting and sensible. He says : " It has been objected that the amendment of our penal code renders *premeditation* an indisputable ingredient to constitute murder in the first degree. But still it must be allowed that the intention remains, as much as ever, the true criterion of crime, in law as well as in ethics ; and the *intention* of the party can

only be collected from his words and actions. * * But let it be supposed that a man without uttering a word should strike another on the head with an axe, it must on every principle by which we can judge of human actions, be deemed a *premeditated* violence." The statute has in no degree altered the common-law definition of murder. But the killing a human being by poison, or lying in wait, or by purposely using a deadly weapon to that end, is murder in the first degree; and the purpose and intent to kill must be determined by the circumstances that surround each case; for the murderer takes with him no witnesses, and does not often avow his purpose.

Where the requisite proof is adduced to show a wicked, intentional murder, he is not permitted to show a voluntary and temporary intoxication in extenuation of his crime.

The respondent takes nothing by his exceptions.