JACOB H. BARNES *v.* V. J. ALBERT.

October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed November 14, 1913.

*Trial by Court—Findings of Fact—Power to Change in Vacation—Petition to Vacate Default Judgment—Evidence—Allegations of Petition—"Judgment by Default"—"Judgment Nil Decit."*

The jurisdiction of the county court, or the presiding judge thereof in vacation, over judgments and the matters on which they are based is only such as the statute confers, and on a petition to set aside a default judgment, where in term time the county court reduced

to writing, signed and filed, its finding of facts and rendered judgment thereon, neither the presiding judge, nor all the judges, had power after the final adjournment of the term to find further facts or to change the findings made.

The allegations of a petition to set aside a default judgment, which are made on oath and of the petitioner's personal knowledge, are available as evidence tending to show a good defence, if that showing is required in such a case.

Where defendant failed to appear though his counsel had mailed him letters notifying him of the day set for trial, and when the case was called defendant's counsel told the court what he had done, and, upon being asked by the court whether he knew why plaintiff should not have judgment, answered that he had nothing further to offer, but did not withdraw his appearance, whereupon judgment was rendered for plaintiff, though that judgment was a "judgment nil decit" rather than a technical default judgment, still it was a "judgment by default" within the meaning of P. S. 2017, authorizing relief against judgment rendered "upon default."

Evidence upon a petition by defendant to vacate a default judgment, rendered against him upon his failure to appear after his counsel had mailed him letters notifying him of the day set for trial, *held* not to show an abuse of discretion in vacating the default and granting a new trial.

PETITION, under P. S. 2017, to vacate a default judgment. Trial by court at the April Term, 1913, Essex County, *Stanton,* J., presiding. Judgment for the petitioner on the facts found. The petitionee excepted. The opinion states the case.

*Theriault & Hunt* for the petitionee.

*Young & Young* for the petitioner.

MUNSON, J. At the October Term of the Essex County court in 1912, the petitionee obtained a judgment against the petitioner on a declaration in general assumpsit, in his absence and without a trial. This is a petition brought to the next term of that court to have the judgment set aside. Hearing was had thereon on the 22nd day of April; the court filed its findings of fact and rendered judgment for the petitioner on the 30th; and on May first, at 9.15 a. m., the term was adjourned without

day.   Neither party nor his counsel was informed of the findings
until after the adjournment.   On the third day of May, the
petitionee filed with the presiding judge requests for further
findings, which were refused.

The judgment was incorporated in the findings of fact, and
was rendered "upon the foregoing facts," and "as a matter of
discretion."   The petitionee was allowed exceptions to the find-
ings of fact, and an exception to the judgment.   He was also
allowed an exception to the refusal of the presiding judge to
grant his requests for further findings,—if such action by the
presiding judge alone, after the adjournment of the term, was
proper matter of exception.   The evidence is referred to upon
the question whether any or all of petitionee's requests for fur-
ther findings of fact should have been granted, and upon the
question whether on the facts found the judgment of the court
was a wrongful exercise or abuse of judicial discretion.

The findings of fact having been reduced to writing, and a
judgment rendered thereon, and the term brought to a close,
we think it was not within the power of the presiding judge,
or of all the judges, to find further facts or change the findings
made.   The powers of the county court or of a judge thereof in
vacation, over judgments and the matters upon which they are
based, are only such as the statute confers.   The matter under
consideration is not within P. S. 1982, for the case is not one in
which either party was entitled to a trial by jury.   It is not
within the first clause of P. S. 1357, for it is not an interlocutory
motion, inasmuch as it did not precede, but followed the judg-
ment.   The provisions of P. S. 1354, 1355, have no relation to
it, for the cause was not only fully heard during the term, but
was finally disposed of in the term by entry of judgment.

It is claimed that a new trial should have been refused
because of the petitioner's failure to show that he had a good
defence.   The petitioner, testifying with reference to his failure
to attend, said that he believed he had a defence to the action,
and that it was his intention to try it.   The petition, duly sworn
to, sets up that the petitionee claimed an amount due on account,
and alleges that the petitioner has paid petitionee all that he
owes him, and is informed and believes that he has and can
establish a complete defence.   If the case is one which requires
some showing of a good defence, the allegations of the petition,
made on oath and of the petitioner's own knowledge, are avail-

able as evidence. *Collins* v. *Farley,* 80 Vt. 144, 66 Atl. 713. There is no finding regarding this, but the allegations stand uncontradicted. It has been said that the court "should look far enough to be satisfied that the case is fairly disputable, and that the defendant in good faith intends to make a defence." *Farmers etc. Ins. Co.* v. *Reynolds,* 52 Vt. 405. We think that where the claim is for an amount due on account, a statement that the petitioner has paid to the petitionee all that he owes him is sufficient. And it may properly be presumed that the court was satisfied from the facts specifically found that the claim of a defence was made in good faith.

The petitionee contends that the judgment set aside was not a judgment rendered on default, but was in effect a judgment by consent. The record shows nothing regarding this. The facts relied upon are these. The appeal having been entered and the case continued to the October Term by agreement, petitioner's counsel informed him that they had agreed with petitionee's counsel that if they could plead out of time the case might be tried at the October Term, and that they had told petitionee's counsel that they would not ask for further delay. Leave to file pleadings out of time was granted. Petitioner's counsel mailed him three letters; one making an appointment with a view to effecting a settlement; another informing him that the case was set for trial at the October Term, and appointing a day when counsel would be at court with his books; and another informing him that petitionee's counsel had notified them that he should call up the case for final disposition at a day and hour named. Counsel kept these appointments, but the petitioner did not appear at any of the times named, and counsel heard nothing from him. Petitionee's counsel called up the matter in accordance with his notice, and petitioner's counsel informed the court of the situation as above presented, and said that they did not feel at liberty to ask for a continuance; and being asked by the court if they knew of any reason why the plaintiff should not have judgment, replied that they had nothing further to offer. Their appearance on the docket was not withdrawn.

The judgment cannot be treated as one rendered by consent. The fact that the petitioner's counsel were present and made no objection to its rendition did not amount to a consent. Their previous understanding with petitionee's counsel as to a trial at that term did not give their action in court the effect of a

consent. The judgment may not be technically a judgment by default.' It is rather a judgment by *nil dicet;* which is substantially the same as a judgment by default. 6 Ency. Pl. & Pr. 59, 60. Our statute gives the relief sought here when judgment is rendered "upon default." P. S. 2017. The exceptions designate the petition as brought under this section, and the prayer of the petition includes a stay of proceedings, which is authorized and regulated by statute. No. 21, Act of 1878; P. S. 2027-2029. The right to strike off an entry of default and judgment at a term subsequent to the judgment has been spoken of as depending upon the statute. *Arlington Mfg. Co.* v. *Mears,* 65 Vt. 414, 26 Atl. 587. But this right has been treated as within the power which a court of general jurisdiction possesses, independent of any statute, to revise and correct its records. *Farmers' etc. Ins. Co.* v. *Reynolds,* 52 Vt. 405. But it is not necessary to consider the matter further. We think the judgment rendered here was a judgment upon default within the meaning of the statute.

If the judgment is to be reversed it must be upon the ground that there was no evidence from which the court could fairly and reasonably draw conclusions of fact which justified this exercise of its discretion. The consideration of this question will require a further reference to matters covered by the testimony. The petitioner's post office and railroad station are at Island Pond, thirty-two miles from Guildhall, the county seat. His residence is two and one-half miles from Island Pond. There was no train connecting for Guildhall after 12.45 P. M. Cook & Norton, petitioner's counsel were located at Lyndonville. It was understood between petitioner and his counsel as early as June that he would come at any time to attend to the case on two or three days' notice. The three letters above referred to were mailed August 5, October 19, and November 13. The first made an appointment for August 8 at 10 A. M., at Island Pond. The second proposed a meeting at Guildhall at the opening of the term, October 22. The third notified the petitioner that the case would be called November 19. The envelopes bore Cook & Norton's return card. No reply nor returned letter was received. Not finding the petitioner at Island Pond, August 8, his counsel made inquiry at the post office and learned that he had been there that morning and had received their letter. Petitioner testified to receiving the letter, but said that he did not open it at the time he took it from the office. Petitioner denied

that he received the second letter. Petitionee claims that he must have received it because his petition sets up certain matters contained in it. These matters were presented to some extent in the third letter as a recital of things written in a previous letter regarding the proposed meeting at Guildhall. The petition sets up these things as information derived from the letter which gave the final notification, but in terms which correspond more nearly to those of the second letter. The third letter, mailed November 13, first appears at the petitioner's house in the hands of his wife on the 18th, when it was shown to the petitioner's son on his coming out of the woods at night. The letter had then been opened, and the son read enough of it to know that it required his father to be at court the next day at five o'clock; and the next morning, as soon as he had had his breakfast, he started for the woods in search of him. The petitioner had gone into the woods on the morning of the 16th as guide to a party of deer hunters, and had not been home in the meantime. His son first went to the camp where the party stayed nights, and tracked his father from there, finding him about noon. On being informed of the letter the petitioner found his party and notified them of his leaving, and then started for his house, arriving there about three o'clock. He went to the village in the evening, and learned that a judgment had been taken against him, and that the court people had come home. The petitioner had been getting his mail every day until the 16th. His wife was not called as a witness, but was at home and in good health on the day of the hearing.

It cannot be said that the court was bound to treat the understanding which antedated the correspondence as requiring the petitioner to remain at home continuously during the term, or take the risk of having a judgment by default rendered against him without the possibility of relief. The understanding assumed that he was to receive notice, and the provision for a two or three days' notice left the understanding open to a reasonable construction and application. The frame of the petition in the respect above mentioned, however suggestive, is not conclusive proof that the second letter was received. In writing the third letter six days before the day appointed for calling the case, petitioner's counsel were sufficiently diligent. There is nothing in the case which excludes the possibility that the letter was delayed in the mails and not delivered until the 18th. It

was for the trial court to say whether an unfavorable inference should be drawn from the failure to call the petitioner's wife as a witness.  The petitioner was not absent from home at a distance and in circumstances which necessarily charge him with negligence.  We think the facts found, when considered in the light of all the evidence, do not justify the conclusion that the action of the court was a wrongful exercise or abuse of judicial discretion.

*Judgment affirmed.*