MABEL C. LEONARD *v.* SUPERIOR JUDGE JULIUS A. WILLCOX ET AL.

January Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed July 7, 1928.

198

*Edward L. Bates* and *Warren R. Austin* for petitioner.

*Walter S. Fenton* for Superior Judge Willcox.

*Collins M. Graves, Frank C. Archibald,* and *George L. Hunt, pro se,* and for John N. Leonard.

MOULTON, J. This is a petition for a writ of prohibition whereby it is sought to restrain Julius A. Willcox, one of the superior judges of this State from taking jurisdiction of an application to change or modify an order, previously made, which affected the care and custody of a minor child.

The grounds upon which the writ is sought are, briefly stated:

 1. That Judge Willcox has no jurisdiction over the subject-matter of the application;

 2. That he has no jurisdiction over the person of the petitioner;

 3. That he is disqualified by bias and incapable of giving the petitioner herein an impartial hearing.

Judge Willcox has appeared, but has filed no answer to the petition. The other respondents, who are John N. Leonard, the former husband of the petitioner, and Messers. Collins M. Graves, Frank C. Archibald, and George L. Hunt, all counsel for John N. Leonard, have filed a joint answer, in which they

say that Judge Willcox has jurisdiction of the subject-matter of the application, and of the person of the complainant, and is not disqualified by bias or prejudice.

In order properly to understand this rather complicated and unusual case, it will be necessary briefly to review the proceedings which have led up to it. They are as follows:

At the December Term, 1922, of the Bennington county court, the petitioner herein, Mabel C. Leonard, obtained a divorce from John N. Leonard, and as an incident to that divorce the custody of the minor child of the parties, Alexander Cooper Leonard, was decreed to the mother. In the decree were certain details providing for the father's right to see and receive visits from the child. In this respect the decree was based upon a stipulation entered into between the parties. At the December Term, 1924, of Bennington county court, both parties brought petitions to the court for modification of this order and for the construction of certain words used in the decree. The original case was brought forward on the docket and after hearing both petitions the court declined to make the modifications requested. On October 19, 1926, John N. Leonard brought another petition for modification of the decree returnable to the December Term, 1926, of the Bennington county court. Judge Willcox was the presiding judge at that term and the petition was heard at length. After a conference between Judge Willcox and the two assistant judges, the former prepared findings of fact. These findings were in favor of Mr. Leonard and expressed the conviction of Judge Willcox that Mrs. Leonard had not acted in good faith with regard to the decree so far as it bore upon the privilege of Mr. Leonard to receive visits from the child, and that she had been influencing the mind of the child against his father. Copies of these findings were submitted to the assistant judges and were delivered to counsel for the respective parties, but after a further conference the assistant judges failed to agree with the conclusions of Judge Willcox, and as a result the findings were not signed. The December Term adjourned on January 28, 1927, but thereafter on February 26, 1927, an order was prepared and signed by the full court expressly modifying certain of the provisions of the original decree as to the custody of the child and providing that it should remain in full force and effect until the first day of the following June and until the further order of the court. At the same

time the case was entered "Heard and with the court for such further proceedings in the premises as the court may find necessary." One of the two assistant judges went out of office on the first day of February, 1927, but he joined in signing the order above mentioned. On May 12, 1927, Mrs. Leonard brought a motion to amend the original decree. This motion was preferred to the county court and Judge Willcox set it for hearing on the 26th day of May, 1927. On the 17th of May, after an interview with counsel for Mrs. Leonard, Judge Willcox signed an *ex parte* order in which the remaining assistant judge joined, suspending the operation of the order of February 26, and making the same inoperative until further order of the Court. On the 26th and 27th of May a hearing was had upon the motion, there being present Judge Willcox and Assistant Judge LaFranchise. Here again after a conference the two judges failed to agree and no order was signed.

Judge Willcox at this time held to the same opinion which he had formed during the trial at the December Term. The June Term of Bennington county court opened on June 7, 1927, and another presiding judge took the place of Judge Willcox. On June 17, Judge Willcox sent the proposed findings of fact prepared by him after the hearings at the December Term, and on May 26 and 27, to the clerk for filing. These papers were signed by Judge Willcox, but not by Judge LaFranchise. On motion made during the June Term on behalf of Mrs. Leonard these papers were expunged from the files. The case, which was the original petition for divorce brought forward on the docket, was entered, "Continued." After the adjournment of the June Term, John N. Leonard brought an application to Judge Willcox asking for modification of the original decree. At that time Judge Willcox signed an order setting the date for hearing on August 22, and providing that service should be made upon Mrs. Leonard, who was then spending the summer at Swampscott, Massachusetts, by delivery of a copy of the petition and order to her at Swampscott by a certain indifferent person therein named, and also commanding her to have the minor child before Judge Willcox at the time and place of hearing.

At that hearing, Mrs. Leonard appeared specially by her attorneys, and by a motion to dismiss raised the question of Judge Willcox's jurisdiction over the proceedings, over her per-

son, and of his bias. The proceedings at this hearing will be later referred to. It is sufficient to state here that Judge Willcox after first declining to take jurisdiction later decided to do so, overruling the objections made by Mrs. Leonard, and that thereupon this petition for a writ of prohibition was brought.

The question of the disqualification of Judge Willcox was raised by a written motion to dismiss, which set forth all of the grounds now relied upon by the petitioner. The respondents say that this is not the proper method by which to raise the point, but that since the question of bias is one of fact (*State* v. *Jurras,* 97 Vt. 276, 280, 122 Atl. 589), a plea in abatement is the appropriate procedure.

It is the general rule that courtesy to the judge requires an objection of this sort to be brought to his atttention before recourse is had to a petition for a writ of prohibition. *State ex rel Poston* v. *District Court,* 31 Wyo. 413, 227 Pac. 379, 35 A. L. R. 1082, and annotation; *Board* v. *Holt,* 54 W. Va. 167, 46 S. E. 134, 135. In the absence of statutory provision, the objection must be made promptly after it becomes known to the objector, or it is waived. *Moses* v. *Julian,* 45 N. H. 52, 84 A. D. 114, 116; *Crosby* v. *Blanchard,* 7 Allen (Mass.) 385, 386; *Bernhamer* v. *State,* 123 Ind. 577, 24 N. E. 509, 510; *Warren* v. *Glynn,* 37 N. H. 340, 342-345.

The form and method of the objections in some jurisdictions is prescribed by rule of court (22 R. C. L. 28), the usual method being by affidavit. We have no regulation as to the matter. It has been held that a motion to dismiss is in the nature of an exception to the jurisdiction and properly raises the question (*Richardson* v. *Welcome,* 6 Cush. [Mass.] 331, 333), and that a petition, setting forth the facts, with a request to the judge not to sit, is appropriate. *Moses* v. *Julian,* 45 N. H. 52, 84 A. D. 114. However, an objection in the lower court cannot be said to constitute a jurisdictional fact, which must appear before the petition for a writ of prohibition can be entertained. In proper cases the higher court will proceed without such objection having been made. *Havemeyer* v. *Supreme Court,* 84 Cal. 327, 24 Pac. 121, 18 A. S. R. 192, 10 L. R. A. 627, 644, 645, and cases cited in note 111 A. S. R. 965, 966. The rule is not rigid and arbitrary, but one of discretion only. *State* v. *Bright,* 224 Mo. 514, 123 S. W. 1057, 135 A. S. R. 552, 558, 559, 20 Ann. Cas. 955; *Bice* v. *Boothsville Tel. Co.,* 62 W. Va. 521, 59 S. E.

501, 125 A. S. R. 989, 13 Ann. Cas. 1046; *Charleston* v. *Little-page*, 73 W. Va. 156, 80 S. E. 131, 51 L. R. A. (N. S.) 353, 355.

In *Hemenway* v. *Hemenway*, 65 Vt. 623, 624, 27 Atl. 609, it is said that divorce proceedings are in the nature of sessions proceedings, and not subject to the ordinary rules of pleadings and practice. Usually there are no pleadings except the libel, and the libel is not required to conform to the common law rules in regard to declaration. No good reason is perceived why the same rule should not apply to vacation applications concerning the care and custody of minor children of divorced, or separated parents. We think that the question of the disqualification of the judge was sufficiently suggested by the motion.

As to the objections of want of jurisdiction over the proceeding itself, because unauthorized by statute, and because of insufficiency of service, the motion to dismiss was clearly appropriate, because these questions were raised by the record. *Flory* v. *Flory's Estate*, 98 Vt. 251, 252, 127 Atl. 369; *Tracy* v. *G. T. Ry. Co.*, 76 Vt. 313, 318, 57 Atl. 104.

It is urged by the respondents that prohibition is not the proper remedy, but that a writ of *certiorari* should have been sought. But *certiorari* is a writ of review, and is necessarily founded upon a final determination of the case by the inferior tribunal. *Culver* v. *Travis*, 108 Mich. 640, 66 N. W. 575. A writ of prohibition is: ''An extraordinary judicial writ issued out of a court of supreme jurisdiction and technically denominated as such * * * * * to cease abusing or usurping judicial functions.'' *Norton* v. *Emery*, 108 Me. 472, 476, 81 Atl. 671, 672. According to Mr. Blackstone (3 Comm. 112), it is: ''A writ directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction but to the cognizance of some other court.''

The writ does not lie to prevent errors or irregularities in the proceedings, if the matter is within the jurisdiction of the tribunal, but its function is to prevent the unlawful assumption of jurisdiction, either of the entire subject-matter or of something collateral or incidental thereto, contrary to common law or statutory provisions. *Bullard* v. *Thorpe*, 66 Vt. 599, 601, 30 Atl. 36, 25 L. R. A. 605, 44 A. S. R. 867; *Board of Education* v. *Holt*, 54 W. Va. 167, 46 S. E. 134, 135. But where

the erroneous decision of the inferior tribunal is one which operates as an unlawful assumption of jurisdiction, prohibition may be had. *Wilkins* v. *Styles,* 75 Vt. 42, 45, 52 Atl. 1048, 98 A. S. R. 804.

The writ never issues if there is other adequate relief. *Bullard* v. *Thorpe, supra.* But such other relief must be adequate, and not merely technically appropriate. "It must give bread, and not a stone." *Curtis* v. *Cornish,* 109 Me. 384 388, 84 Atl. 799, 800. The existence of the right of review, by exception, or otherwise, will prevent the issuance of the writ. *In re Rice,* 155 U. S. 396, 39 L. ed. 198, 201, 15 Sup. Ct. 149; *Ex parte Oklahoma,* 220 U. S. 191, 55 L. ed. 431, 435, 31 Sup. Ct. 426; *Whitehead* v. *Roberts,* 86 Conn. 351, 85 Atl. 538, 539, Ann. Cas. 1914A, 134; *Cloutier* v. *Vidal* (R. I.), 107 Atl. 78.

The writ goes against "as well the party and his counsel as the judge himself," and, in a proper case, "the remedy is a liberal one, and not to be applied sparingly." *Bullard* v. *Thorpe, supra.*

The respondents say that the issuance of the writ is discretionary. Upon this question there is a conflict of authority (see 22 R. C. L. 5), but, although it may be discretionary under certain circumstances, the general rule is that stated in *In re Rice,* 155 U. S. 396, 402, 39 L. ed. 198, 201, 15 Sup. Ct. 149, 152, as follows:

"Where it appears that the court whose action is sought to be prohibited has clearly no jurisdiction of the case originally, or of some collateral matter arising therein, a party who has objected to the jurisdiction at the outset, and has no other remedy, is entitled to a writ of prohibition as a matter of right."

See, also, *In re Hussein Lufti Bey,* 256 U. S. 616, 619, 65 L. ed. 1122, 41 Sup. Ct. 609, 610; *Petition of U. S.,* 263 U. S. 389, 393, 68 L. ed. 351, 44 Sup. Ct. 130, 131, 132; *In re Muir,* 256 U. S. 522, 523, 524, 65 L. ed. 383, 41 Sup. Ct. 185, 188; *Ex parte Oklahoma,* 220 U. S. 191, 55 L. ed. 431, 435, 31 Sup. Ct. 426; *In re Cooper,* 143 U. S. 472, 36 L. ed. 232, 239, 12 Sup. Ct. 453.

No right of review by appeal or exception existed in relation to the proceedings before Judge Willcox, which were for temporary relief only. Indeed, the contrary is not claimed.

▆ It has been held that a writ of prohibition lies to prevent the assumption of jurisdiction by a judge over a case in which he is disqualified by interest or prejudice, whether by statute or at common law. *Forest Coal Co.* v. *Doolittle*, 54 W. Va. 210, 46 S. E. 238, 239; *State ex rel. McAllister* v. *Slate*, 278 Mo. 570, 214 S. W. 85, 87, 8 A. L. R. 1226; *State* v. *Board of Education*, 19 Wash. 8, 52 Pac. 317, 40 L. R. A. 317, 67 A. S. R. 706, 714; *People* v. *District Court*, 60 Col. 1, 152 Pac. 149, 150. We think, and hold, that the remedy is appropriate here.

The respondents say that the petition alleges that bias exists only because Judge Willcox has heard the evidence, and expressed his opinion thereon, during his previous participation in the case; and these allegations fall short of alleging actual bias and prejudice, such as the petitioner argues in her brief. We think, however, that the allegations of the petition taken as a whole are sufficient to cover the claims made by her.

▆ We proceed to consider the first ground alleged as a basis for the petition. It is to be observed that the proceeding here in question is an application to a superior judge, not the presiding judge of the last term of county court, in vacation. We are concerned only with the statutory grant of jurisdiction because the authority and jurisdiction of a county court, or of a judge thereof in vacation, over judgments and the matters upon which they are based are only such as the statute confers. *Saund* v. *Saund*, 100 Vt. 176, 178, 136 Atl. 22; s. c., 100 Vt. 387, 391, 138 Atl. 867; *Morgan* v. *Gould*, 96 Vt. 275, 278, 119 Atl. 517; *Barnes* v. *Albert*, 87 Vt. 251, 253, 88 Atl. 815.

▆▆ The sections of the statute authorizing a superior judge to act in vacation, so far as material, are as follows:

"Section 1610. Any superior judge, on application of either party and on reasonable notice to the attorney of the opposite party, may, in vacation, hear and determine a demurrer or an interlocutory motion in a cause pending in a county court, and may, to expedite the trial of such cause, make any order therein which the county court could make if in session * * * * * *"

"Section 3599. When petition is made under either of the two preceding sections, a summons shall be issued to the other party to appear at the court to which the peti-

tion is returnable, and show cause why the prayer of the petition should not be granted, which summons and the petition shall be served on said party twelve days prior to the session of the court; and, after the filing of such petition the county court in which the cause is pending, or any superior judge, may, on application of either party, make such order concerning the care and custody of the minor children during the pendency of the petition, as is deemed expedient and for the benefit of said children.''

The respondents say that the jurisdiction to entertain the application which is the basis of this case may be sustained under the terms of G. L. 1610, above quoted, because the power of the county court concerning the care, custody, and maintenance of minor children of divorced parents is not exclusively contained in G. L. 3597 and 3599, and independently of these statutes the jurisdiction grows out of the very nature of the proceedings for divorce and the necessity to prevent wrong and failure of justice. See *LeBarron* v. *LeBarron*, 35 Vt. 365, 369; *Andrew* v. *Andrew*, 62 Vt. 495, 497, 20 Atl. 817. But we do not consider the applicability of this section, because we think that jurisdiction of the application for a modification of the order is to be found under the provisions of section 3599, above quoted. That section must be read with reference to the two preceding sections, 3597 and 3598, because by its terms the powers and jurisdiction of a superior judge depend upon the pendency of a petition brought under one of the two sections last mentioned. Section 3597 provides:

''When a marriage is annulled or a divorce granted, and at any time thereafter, upon petition of either of the parents, the court may make such other or further decree as it deems expedient concerning the care, custody and maintenance of the minor children of the parties, and may, on the petition of either of the parents, annul, vary or modify such order.''

Section 3598 refers to a situation where the parents of the minor child are not divorced but are living separate. For this reason this section does not apply here.

So, reading sections 3597 and 3599 together, it must appear, if we are to say that Judge Willcox had jurisdiction of

the application for modification, that there was pending a petition brought under section 3597, in which a summons had been issued to the defending party to appear at a term of court and show cause why the prayer of the petition should not be granted, which summons and petition had been served at least twelve days prior to the session of the court, and that the same had been filed. The term "session" as here used, refers to a stated term of the county court and means the same thing. *Dunn* v. *Dunn*, 96 Vt. 44, 46, 116 Atl. 113.

The petition of October 19, 1926, brought by John N. Leonard and made returnable to the December Term, 1926, of the Bennington county court, was such a petition and came within the terms of the statute.

As we have seen, an order was made under this petition dated February 26, 1927, to remain in force until the first day of the following June, and until further order of the court, and the case was entered "Heard, and with the court for such proceedings in the premises as the court may find necessary." There is no doubt that this was intended to be a temporary order, for by its terms it expired on a fixed date. The provision that it should remain in force until further order of the court added nothing at all to it, because all such orders have to remain in force until some other order of court modifies or annuls them. The changing circumstances and necessities of the children and the parties require this to be so. *LeBarron* v. *LeBarron, supra.*

However, the order of February 26, 1927, was annulled by further order of the court on May 17, 1927, and this left the situation as it had been before the petition of October, 1926, had been brought. It is evident that the order of May 17, was intended and understood to be temporary only. Indeed, the motion of Mrs. Leonard was stated to be for temporary relief. A hearing was contemplated and actually had on May 26 and 27, although no decision was reached at that time.

When the June Term of Bennington county court convened, the jurisdiction of Judge Willcox and Judge LaFranchise as judges of the December Term of county court ceased. The entry "With the court," made in February, gave the court power to proceed during vacation only. *Morgan* v. *Gould*, 96 Vt. 275, 278, 119 Atl. 517; *Saund* v. *Saund*, 100 Vt. 176, 178, 136 Atl. 22; s. c., 100 Vt. 387, 393, 394, 138 Atl. 867,

869, 870. On the opening of the June Term the entry ceased to be effective. *Saund* v. *Saund,* 100 Vt. 387, 393, 394, 138 Atl. 867, 869, 870. The original divorce proceeding thus standing upon the docket was continued generally at the June Term. The petition was properly entered as a part of it (*Whittier* v. *McFarland,* 79 Vt. 365, 65 Atl. 81), and so was governed by the entry of continuance. No final disposition had been made of it, because of the failure of the judges to agree, after the hearing in May, and it was still pending, so that an application could properly be brought to any superior judge under G. L. 3599.

The attempted filing of the findings by Judge Willcox during the June Term had no effect one way or the other. It is argued by the respondents that this was proper and lawful under G. L. 1610, and under an act of the special session of the Legislature, approved November 30, 1927 (Act No. 5), entitled ''An Act to Validate Judgments Entered in Cases with the Court.'' But it is enough to say that the judgment in a case so entered must be with the concurrence of a majority of the court. *Saund* v. *Saund,* 100 Vt. 176, 177, 136 Atl. 22; s. c., 100 Vt. 387, 391, 138 Atl. 867; *Platt* v. *Shields et al.,* 96 Vt. 257, 266, 119 Atl. 520. Expunged or not, the findings and orders being those of one member of the court without the concurrence of the other member who participated in the trial were of no force and effect.

The application and order was served upon Mrs. Leonard by the delivery of copies to her at Swampscott, Massachusetts, by a person named in the order for service made by Judge Willcox, more than twenty days before the date set for the hearing. It is objected that this was insufficient service, and because of it Judge Willcox was without jurisdiction.

The petitioner argues that the copy of the application and order should have been served as provided in G. L. 1736, by delivering to Mrs. Leonard a true and attested copy thereof with the officer's return thereon, or by leaving such copy at the house of her usual abode with some person of sufficient discretion then resident therein, or, if there is no such person, by lodging the same at the house so that the defendant will most probably receive it. But this contention does not take into account the nature of the proceeding. This is not an original writ of summons, such as is contemplated by the statute above mentioned. It is an application for a temporary order, made

during the pendency of and as an incident to the petition under G. L. 3597. G. L. 3599, which authorizes it, does not specifically provide for notice; but, there being no express requirement to the contrary, the statute will not be interpreted to authorize judicial proceedings without notice to the parties to be affected thereby, because such would not be due process of law. In the absence of a plain provision to this effect the common law requires that notice shall be given. *Bioni* v. *Haselton,* 99 Vt. 453, 457, 134 Atl. 606; *In re Allen,* 82 Vt. 365, 372, 373, 73 Atl. 1078, 26 L. R. A. (N. S.) 232. Since the parties were in court by virtue of the pending petition of October, 1926, any reasonable notice of the application was sufficient. There is no claim that the notice actually given by the delivery of the copy at Swampscott was not in point of fact reasonable. We hold that, in the circumstances of this case, nothing further was required, and, so far as his point is concerned, there was no lack of jurisdiction.

Nor does the order providing for the production of the minor child at the hearing divest Judge Willcox of jurisdiction. The welfare of the child was the controlling consideration. *Bioni* v. *Haselton, supra; Deyette* v. *Deyette,* 92 Vt. 305, 309, 104 Atl. 232, 4 A. L. R. 1115. Under the circumstances he was, in legal contemplation, continuously within the control of the court, or of a superior judge, upon proper application being made for an order respecting his custody. Such judge had full authority to require the presence of the child at the time and place of hearing, at the hand of that parent in whose custody he had been placed by a former order of court.

The respondents say that Mrs. Leonard has disobeyed the order to produce the child before Judge Willcox, and for this reason the writ of prohibition ought to be denied, and cite, in support of this claim, *Foster* v. *Redfield,* 50 Vt. 285, 292. In that case, it appeared that, after hearing a divorce action, the county court announced that no cause for divorce was found to exist, but that the case should stand continued until a subsequent term so that the parties might become reconciled, if possible. Thereafter the libellee neglected and refused to comply with an order for the support of the libellant and the minor children, and removed from the jurisdiction so that the process could not be served upon him. While without the jurisdiction the libellee brought a petition for a writ of mandamus, to re-

quire the judges of the county court to enter final judgment in his favor in the divorce proceeding, in accordance with their finding that no ground for divorce appeared. As one reason for denying the writ it was held that no help could be given to a party who had absconded from the State for the purpose of denying the jurisdiction and orders of the judicial authorities thereof in the very matters in reference to which he was asking the action of the court in his favor.

This is not, however, a parallel case with the one before us. It does not appear that Mrs. Leonard had removed from the State for the purpose of denying the jurisdiction of the courts. Her presence, with the child, in Swampscott, was in accord with her yearly practice, and the propriety of it was recognized and affirmed by the court in the hearing at the December Term, 1924. It was perfectly proper for her to appear specially by attorney and urge the want of jurisdiction of Judge Willcox, and her standing before us is not impaired thereby.

We now proceed to consider the contention that Judge Willcox was disqualified by bias and so incapable of giving the parties an impartial hearing upon the application. The statutory provisions which deal with the disqualification of a superior judge are G. L. 1482, which provides that a Justice of the Supreme Court, chancellor, judge, justice of the peace, master in chancery, juror, or other person shall not act in a judicial capacity in or as a trier in a cause or matter in which he has been retained or acted as an attorney or counsel, or is interested in the event of such cause or matter, or is related to either party within the fourth degree of consanguinity or affinity; G. L. 1483, which forbids a Justice of the Supreme Court or a superior judge to act as referee, auditor, commissioner or special master in a cause pending in a court in this State, unless he began the hearing as such prior to his appointment or election as such Justice or judge; and G. L. 1590 which forbids a Justice or judge sitting in the trial of the cause *in banc* which he tried in county court or sitting in the hearing of an appeal from the court of chancery taken from a decree made by him unless the decree is strictly *pro forma* and made without hearing.

Section 28 of the Constitution of this State is as follows:

"The courts of justice shall be open for the trial of all causes proper for their cognizance; and justice shall be

therein impartially administered, without corruption or unnecessary delay.''

In *Batchelder* v. *Nourse*, 35 Vt. 642, it was held that a justice of the peace was not legally disqualified to take jurisdiction of and try a case for the reason that he had previously as one of a board of arbitrators between the same parties, and in reference to the subject-matter of the suit, upon a hearing as such arbitrator formed an opinion and expressed the same to his associate arbitrator. The reason given for this holding was that the statute specifically provided what should disqualify the justice from exercising in the given case the functions appertaining to his office; that only those enumerated were to be held as effectual to disrobe him of his official capacity in the particular case, and, upon familiar principles of construction, other causes of disqualification were to be regarded as excluded; and that the cause assigned was outside of the terms and equally to be regarded to be outside of the policy of the statute.

The respondents regard this case as settling the doctrine for this State that no cause of disqualification exists outside of those enumerated by statute. But it is to be noted that the only issue presented was whether the fact that the justice had participated in the arbitration hearing and had expressed his opinion with regard to it was sufficient, standing alone, to cause his disqualification. So far as appears no claim was made of bias upon his part or inability to give to parties an impartial hearing in the pending case, and the bearing of the constitutional provision to which we have referred was not considered. In *State* v. *Jurras*, 97 Vt. 276, 122 Atl. 589, it was held that a municipal judge who had ordered and participated in an inquest conducted for the purpose of procuring evidence to be used in the trial of a complaint then pending, was not thereby disqualified from presiding at the trial, there being no statutory provision to this effect; and it was said (page 280 [122 Atl. 590]) :

''It must be apparent that the mere act of conducting such an inquest would not necessarily prevent the judge from administering justice impartially at the trial. In other words, it would not *per se* disqualify him to act in the manner required by the Constitution. On the other hand, bias or prejudice, however engendered, such as would

deny to a respondent an impartial trial would doubtless disqualify the judge notwithstanding the statute.''

It is said that at the common law, as now administered in England and the United States, bias not the result of interest or relationship is not supposed to exist. *Fulton* v. *Longshore,* 156 Ala. 611, 46 So. 989, 19 L. R. A. (N. S.) 602, 603; *Elliott* v. *Hipp,* 134 Ga. 844, 68 So. 736, 137 A. S. R. 272, 275, 20 Ann. Cas. 423. It is said by Mr. Blackstone, 3 Comm. 361:

"By the laws of England also, in the times of Bracton and Fleta a judge might be refused for good cause; but now the law is otherwise, and it is held that judges and justices cannot be challenged. For the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea."

But the later English cases hold that where a real likelihood of bias from any cause is shown to exist, a judge is thereby rendered incompetent to sit. *Queen* v. *Meyer,* 1 Q. B. D. 173, 177; *Regina* v. *Rand,* L. R. 1 Q. B. 230, 233; *Queen* v. *Farrant,* 20 Q. B. D. 58, 61. Lord Chancellor Cave, in the recent case of *Frome United Breweries Co.* v. *Keepers etc., of Bath,* 1926 A. C. 586, 590, says:

"If a member of the judicial body is subject to a bias (whether financial or other) in favor of or against either party to the dispute, or is in such position that a bias must be presumed, he ought not to even sit on the tribunal."

It is said in *Stamp* v. *Commonwealth,* 195 Ky. 404, 411, 243 S. W. 27, 30:

"Among all English speaking peoples there obtains a well-recognized cardinal rule * * * * that every individual charged with the commission of a crime, be accorded a fair and impartial trial. This requirement also applies in civil actions and proceedings involving the individual's right of person or property."

And in *People* v. *District Court,* 60 Col. 1, 152 Pac. 149, 150:

"The first ideal in the administration of justice is that the judge must be free from bias and partiality. Men are so agreed on this principle that any departure therefrom shocks their sense of justice. * * * * * * We are equally certain that when the facts of a case disclose, in the manner required by statute, that a judge is prejudiced or otherwise incompetent to hear or try a case, but, nevertheless, proceeds in that regard, the issues are not likely to be determined and the rights of the parties properly protected and enforced in a court over which he presides."

All this is in accord with the language of this Court in *Cady, Admr.* v. *Lang,* 95 Vt. 287, 294, 115 Atl. 140, 143.

"Every man is entitled by law not only to a fair trial of his case, but to one as free as may be from suspicion of partiality."

Section 28 of our Constitution, quoted above, is declaratory of this principle. Constitutions of other states embrace similar provisions, differing somewhat in language, but alike in meaning. As to that contained in the Constitution of New Hampshire, we quote from *Moses* v. *Julian,* 45 N. H. 52, 54, 55, 84 A. D. 114, 118, 119:

"The thirty-fifth article of the bill of rights of New Hampshire declares that 'it is essential to the rights of every individual, his life, liberty and character, that there should be an impartial interpretation of the laws and administration of justice.' And 'it is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit.' This is but the expression of a well-known rule of universal justice everywhere recognized, which the people of this State were anxious to secure as far as possible from all doubts, or possibility of legislative interference. It is one of the great principles of the common law, for which the people of England had struggled for ages, and which they ultimately succeeded in establishing against the strenuous efforts of a tyrannical government. We can have no higher authority than this for denouncing as illegal everything which interferes with the entire impartiality of every legal tribunal."

█ We hold, therefore, that under our constitutional provision, bias or prejudice on the part of a judge, existing to such an extent that an impartial hearing cannot be had, will disqualify him, and, if objection is properly made, result in his recusation. The Constitution, in this respect is self-executing, and is of full effect whether or not the Legislature has acted with reference to its subject-matter. *Day* v. *Day,* 12 Idaho, 556, 86 Pac. 531, 534, 10 Ann. Cas. 260; *Rea* v. *State,* 3 Okl. Cr. 276, 105 Pac. 384, 139 A. S. R. 954, 956; *Ex parte Ellis,* 3 Okl. Cr. 220, 105 Pac. 184, 25 L. R. A. (N. S.) 653, 659, Ann. Cas. 1912A, 863.

It is plainly intended not merely for the parties to a suit, but for the general interests of justice by preserving the purity and impartiality of the courts, and the respect and confidence of the people for their decisions *Carr* v. *Duhme,* 167 Ind. 76, 78 N. E. 322, 323, 10 Ann. Cas. 967, and note; 15 R. C. L. 530.

In so holding, we are not unmindful of the rule stated in *Patterson* v. *Collier,* 75 Ga. 419, 425, 58 A. R. 472, 476, that: "To multiply disabilities by a more than doubtful construction, when none are created by the words of the statute, we apprehend, would be as unwise as it is impolitic and harmful." See, also, *Davidson* v. *Whitehill,* 87 Vt. 499, 510, *et seq.,* 89 Atl. 1081. But it has been held that such provisions are remedial in nature and to be liberally construed so that justice may be effected and promoted. *State* v. *Lewis Co., Super, Ct.,* 106 Wash. 507, 180 Pac. 481, 482; *Henry* v. *Speer,* 201 Fed. 869, 871, 20 C. C. A. 207. This doctrine is consonant with the language of this Court in *Cady, Admr.* v. *Lang,* 95 Vt. 287, 293, 115 Atl. 140, 142, which, although relating to a different situation is entirely apposite here:

> "If this be not so, and a state of circumstances similar to that suggested above as consequent on such acts of voluntary disqualification, can lawfully exist in connection with the operation of our judiciary system, where, in the eyes of the public, are to be found the purity, the integrity, and the impartiality of the courts, contemplated by the Constitution which have ever been averred by the people of the State, and which must be maintained or the honor of the courts will soon be prostrate."

It is a delicate matter to determine whether a judge is so biased or prejudiced that he cannot administer impartial justice between the parties. The bias or prejudice must be against the party and not against the particular delinquency charged. *State* v. *Jurras,* 97 Vt. 276, 280, 122 Atl. 589. It must be clearly established by the record. *Emporia* v. *Volmer,* 19 Kan. 622, 627; *State* v. *Morrison,* 67 Kan. 144, 149, 72 Pac. 554; *State* v. *Bohan,* 19 Kan. 28, 52. It is a charge easily made, for, as is said in *McDonald's Admr.* v. *Wallsend, etc., Co.,* 135 Ky. 624, 633, 117 S. W. 349, 351, "It is hard to please a losing litigant," and in *Ingles* v. *McMillan,* 5 Okl. Cr. 130, 113 Pac. 998, 41 L. R. A. (N. S.) 511: "A defendant is easily persuaded of the prejudice of a judge. Adverse rulings always convince him of that fact." See, also, *Emporia* v. *Volmer, supra.* Furthermore, "Before a reviewing court can hold that a judge has erred * * * * upon the ground of his bias and prejudice against a party, it must appear that it is the judge who is prejudiced against the party, and not that it is the party who is prejudiced against the judge." *State* v. *Grinstead,* 62 Kan. 593, 599, 64 Pac. 49, 51.

It is not enough merely to show previous adverse rulings, no matter how erroneous, or numerous (*Ex parte American Steel Barrel Co.,* 230 U. S. 35, 44, 57 L. ed. 1379, 1383, 1384, 33 Sup. Ct. 1007; *Johnston* v. *Dakan,* 9 Cal. App. 522, 99 Pac. 729, 730; *Conn.* v. *Chadwick & Co.,* 17 Fla. 428, 441; *Insurance Co.* v. *Landram,* 88 Ky. 433, 438, 11 S. W. 367; *State* v. *Bohan,* 19 Kan. 28, 52; *Burke* v. *Mayall,* 10 Minn. 287, 290 [Gil. 226]; *McEwen* v. *Ins. Co.,* 172 Cal. 6, 155 Pac. 86, 88; *Johnson* v. *State,* 31 Tex. Cr. R. 456, 20 S. W. 985, 986); or merely to show a judge's expression of opinion, uttered in what he conceived to be the discharge of his judicial duty, based upon evidence produced before him. *McEwen* v. *Ins. Co., supra.* So, too, in a criminal case the belief or disbelief of the trial judge in the guilt of the respondent is not the test of his qualification, for he may believe the guilt of the latter, and yet conduct the trial with the utmost fairness and impartiality. It is the existence of bias or prejudice in his mind against the respondent which must be clearly shown. *State* v. *Morrison,* 67 Kan. 144, 149, 72 Pac. 554; *State* v. *Bohan,* 19 Kan. 28, 52. "It is the existence of prejudice to be overcome that disqualifies a judge from sitting; it is not the ability to overcome it which qualifies

the judge to sit." *State* v. *Grinstead*, 62 Kan. 593, 601, 64 Pac. 49. If bias or prejudice exists, so that impartiality is destroyed, its origin or reason is immaterial, and it does not matter whether it is warranted or unwarranted. *State ex rel. McAllister* v. *Slate*, 278 Mo. 570, 214 S. W. 85, 88, 8 A. L. R. 1226; *Powers* v. *Commonwealth*, 114 Ky. 237, 70 S. W. 644, 650. "The first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality." *Oakley* v. *Aspinwall*, 37 N. Y. 547, 549.

Bias is not synonymous with corruption, or dishonesty. It does not "necessarily imply corruption on the part of the judge, or that he would knowingly disregard the law or the evidence." As said in *Givens* v. *Cranshaw* (Ky.), 55 S. W. 905: "It may, however, sometimes happen that conditions and circumstances are such that the perfectly honest and competent judge would in fact be unable to afford a litigant such an absolutely impartial trial as the law intends and requires." *Powers* v. *Comm.*, 114 Ky. 237, 70 S. W. 644, 651.

To the same effect are *Vance* v. *Field*, 89 Ky. 178, 185, 12 S. W. 190; *McDonald's, Admr.* v. *Wallsend, etc., Co.*, 135 Ky. 624, 632, 117 S. W. 349; and *State ex rel. McAllister* v. *Slate*, 278 Mo. 570, 214 S. W. 85, 89, 8 A. L. R. 1226. In the last-named opinion occurs this language:

> "In so finding, we pause in all fairness to disclaim the remotest reflection upon the motives of the able and learned respondent. His attitude may well be ascribed to the righteous exasperation of an honest and conscientious judge driven to indignation and from judicial plumb by what he conceived to be unjust and unwarranted criticism of his official conduct."

Testimony was taken, in the instant case, before a commissioner, duly appointed by this Court, and a transcript of the evidence, together with numerous exhibits is before us, and sundry matters are urged upon us as proof that Judge Willcox was actuated by bias and prejudice against the petitioner. Among them are the claims that, at the hearing during the December Term, he originated the charge that she was not acting in good faith and sincerity under the order of custody then in force, but was alienating the child's affections from his father; that he refused to believe the uncontradicted evidence

that the child's fear of his father was due to the latter's own conduct; that he characterized the petitioner's construction of the order as "a mere subterfuge"; that he refused to believe that certain claims of the petitioner as to indecent conduct by her former husband (the prurient details of which we omit), were not for the first time mentioned by her on the hearing before him; that the temporary order signed by Judge Willcox and his associate after the hearing was such as to authorize force to be exerted upon the child, under certain circumstances, in transferring him to his father, ignoring the testimony that this would result in physical harm to the child; that he made certain essential findings contrary to the opinion of his associates and with the knowledge that they dissented from his conclusions; and, lastly, the claim that he showed his ill will toward the petitioner by his denial, when on the stand, of her evidence as to what transpired during an interview with her in his chambers in the court house.

We shall take no time in discussing the evidence. The transcript has been carefully examined. Nothing therein contained, with regard to any of the matters we have mentioned, taken by itself, convinces us of the existence of a disqualifying bias on the part of Judge Willcox. Nor do his somewhat heated replies to certain questions asked of him by the petitioner's counsel lead us to a different conclusion.

The petitioner stresses testimony by Judge Willcox, to the effect that he had not filed an answer, because he did not wish, by so doing, to appear to be in any way partisan. This is treated in the petitioner's brief as implying that if he had answered he would have disclosed the fact that he was partisan. But this is not the construction we place upon it. It is evident that his meaning was that, if he should answer, he would, by that act alone, appear to be partisan. Whether he was justified in this opinion, is beside the point; but to attribute the meaning to the testimony claimed by the petitioner, is to give it a strained construction, and one which we cannot adopt. The petitioner contends that since Judge Willcox heard the former case, and made up his mind, and reached a ·clear conviction as to the issues, which he expressed in the findings of fact prepared and signed by him, he had become incapable of administering impartial justice in the pending application. Mr. Webster defines "impartial" as "not partial"; not biased in favor of one party,

more than another; indifferent; unprejudiced; disinterested. An expression of opinion by a judge, upon a question of law, does not disqualify him upon another hearing of the case. *Pearson* v. *Hopkins,* 2 N. J. Law, 181, 195. But Judge Willcox, in all of the proceedings before him, sat as a trier of fact. It has been held that, while an opinion held by a juror as to the merits of the case upon which he is called to sit, will not disqualify him, the expression of that opinion will do so. *State* v. *Phair,* 48 Vt. 366, 375-377; *State* v. *Tatro,* 50 Vt. 483, 489; *Weeks* v. *Lyndon,* 54 Vt. 638, 647. But the late Judge Royce, in *State* v. *Phair, supra,* says that:

"It would be more reasonable not to make the formation and expression of an opinion the arbitrary test of a juror's competency, but to permit an inquiry * * * * * as to the facts and circumstances upon which the opinion was formed; and if upon such inquiry it should be found the juror was free from bias or prejudice, and could and would fairly and impartially judge of the matters to be submitted to him, he should be held to be competent."

It has been held that, where judges pass upon the facts and it is a pure question of fact which is presented to them for consideration and determination, no good reason is apparent why the test of qualification should be different from that in the case of jurors, for the judge, under such circumstances, is in reality a juror passing upon questions of fact. *State* v. *Board of Education,* 19 Wash. 8, 13, 52 Pac. 317, 40 L. R. A. 317, 67 A. S. R. 706, 710; *Williams* v. *Robinson,* 6 Cush. (Mass.) 333, 334. But it is said in the first of the opinions above cited that some courts have held that the qualifications of judges and jurors are not the same.

 However, it is not necessary for us to decide this point, because there is that in this case which goes beyond the mere formation and expression of an opinion. The transcript of the proceedings before Judge Willcox at the hearing of August 22, 1927, when the motion to dismiss upon the ground of his bias was made, is an exhibit and its correctness is not disputed. Therein it appears that Judge Wilcox said, from the bench:

"It will be utterly useless for me to attempt to get out of my mind the conclusions (which) were reached when I heard this matter as presiding judge at the December Term, and when I again sat here on May 26 and 27. It is my notion that I am not legally disqualified for hearing this matter, and I use the words 'legally disqualified' advisedly * * * * * * * * I am free to say that I believe it would be very doubtful if any testimony could be offered of anything that transpired since last May 26 that would bring my mind to any different notion than it came to after those two days."

This statement was not calculated to assure the petitioner, or her counsel, or anyone, that the case was not prejudged. We do not question the sincerity of the opinion held by Judge Willcox, which he so frankly expressed, but it is very evident that, under the circumstances, an impartial trial could not be expected. When a judge feels and expresses doubt that any evidence, covering matters which have transpired since a former hearing of the same issue, the purport of which he does not know, but which, presumably is material and relevant, will change his conviction then reached, he has admitted his bias, and has disqualified himself from proceeding further in the hearing. A litigant ought not to be compelled to submit to a judge who has already confessedly prejudged him, and who is candid enough to announce his decision in advance, and his serious doubt that he would do otherwise than adhere to it, no matter what the evidence might be. *State* v. *Board of Education*, 19 Wash. 8, 19, 52 Pac. 317, 40 L. R. A. 317, 67 A. S. R. 706, 714; *Williams* v. *Robinson*, 6 Cush. (Mass.) 333, 335; *Moses* v. *Julian*, 45 N. H. 52, 84 A. D. 114, 116.

This is a matter which does not alone concern the parties to this litigation. The courts, in the eyes of the public, should be as free as may be from even the suspicion of partiality. *Stamp* v. *Comm.*, 195 Ky. 404, 413, 243 S. W. 27; *Cady, Admr.* v. *Lang*, 95 Vt. 287, 293, 115 Atl. 140; *People* v. *District Court*, 60 Col. 1, 152 Pac. 149, 150. The language of Judge Bronson in *People* v. *Suffolk Common Pleas*, 18 Wend. (N. Y.) 550, 552, is peculiarly appropriate:

"The act complained of was calculated to impair the confidence of the opposite party in the impartiality of the

officer, which is, of itself, an evil which should be carefully avoided. Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.''

We hold, therefore, that Judge Willcox was disqualified to sit in this proceeding, because of his bias as evidenced by his admission from the bench, and for this reason the writ of prohibition will be issued, as prayed for, to restrain him from further proceeding in said cause.

In view of this disposition of the case, it is not necesary to consider the effect of the failure of Judge Willcox to file an answer to the petition, or the various questions as to the admissibility of certain evidence, raised by the respondents.

*It is ordered that a writ of prohibition issue, in the name of the State, signed by the clerk, directed to the respondents, prohibiting them from proceeding further in the application set forth in the petition for said writ, without costs.*